IN THE MATTER OF APRIL ANN KLAUS

IN THE MATTER OF DANIEL JAMES KLAUS

Docket Nos. 48448, 48449. Submitted March 3, 1981, at Grand Rapids.
—Decided August 5, 1981.

Thomas J. Klaus and Karen Klaus petitioned for the adoption of
April Ann Klaus and Daniel James Klaus. Since April Ann and
Daniel had been in foster care for more than four months prior
to adoption, the Schoolcraft Probate Court in its April 22, 1977,
order granting adoption also granted, upon the request of
petitioners, an adoption support subsidy with respect to each
child. On May 10, 1978, petitioners filed the annual reports
required by the adoption support statute and orders, said
reports having been due on April 22, 1978. In July, 1978, an
investigation was ordered by the probate court in order to
determine whether the adoption support subsidies should be
continued. On the basis of the investigation report, and without
a hearing or the taking of testimony, John M. Pater, J.,
terminated the adoption support subsidies by an order dated
August 15, 1978. Petitioners appealed to Schoolcraft Circuit
Court, William F. Hood, J., who remanded the matter to the
probate court and ordered the probate court to conduct an
evidentiary hearing and to make written findings of fact and
conclusions of law. Following two hearings, Judge Pater issued
a written opinion in which he found that the petitioners had
failed to meet the statutory duty to file the annual sworn
reports and that the adoption support subsidies had been used
to pay the obligations of petitioners rather than the support of
the children. The court affirmed its prior order terminating the
subsidies. Petitioners appeal by leave granted. *Held:*

1. While the probate court recited the statutory language
that "the testimony and other information" showed changed
conditions relative to the adoption support subsidies, the record
does not demonstrate that the court relied on information other
than that presented at the hearings and contained in the

REFERENCES FOR POINTS IN HEADNOTES

[1-5] 2 Am Jur 2d, Adoption §§ 5, 86.

59 Am Jur 2d, Parent and Child § 50 *et seq.*

investigative report filed by the juvenile department and the reports filed by petitioners in reaching its decision. Petitioners' constitutional challenge on the basis that the subsidies were discontinued on the basis of secret information is misplaced.

2. The probate court abused its discretion in basing the discontinuation of the subsidies on petitioners' late filing of the annual reports, since the delay was not willful and amounted to an inconsequential technical violation of the statutory. mandate.

3. While a wrongful diversion by adoptive parents of adoption support subsidy payments to uses other than the support of the adopted children constitutes changed conditions justifying termination of such a subsidy, there remains some question in this case as to whether there was, in fact, wrongful diversion of the subsidy payments. The probate court should conduct an evidentiary hearing directed at the question of the wrongful diversion of the payments. If after such hearing the record clearly establishes the wrongful diversion, the order terminating the subsidies should stand or, in the alternative, the level of subsidy payment should be reduced to an appropriate level such that no surplus is available for nonsupport uses.

Remanded.

1. PARENT AND CHILD — ADOPTION — ADOPTION SUPPORT SUBSIDY — STATUTES.

It is an abuse of discretion for a probate court to permanently terminate an adoption support subsidy because of a prior failure by the adoptive parents to file timely the statutorily required annual report where the failure to file such report in a timely manner was not willful and amounted to an inconsequential technical violation of the statutory mandate (MCL 710.48; MSA 27.3178[555.48]).

2. PARENT AND CHILD — ADOPTION — ADOPTION SUPPORT SUBSIDY — STATUTES.

The purpose of the statutorily permitted adoption support subsidy is to encourage the adoption of children who are in foster care for more than four months by relieving the financial burden of adoption (MCL 710.48; MSA 27.3178[555.48]).

3. PARENT AND CHILD — ADOPTION — ADOPTION SUPPORT SUBSIDY — STATUTES.

The statutory adoption support subsidy is meant to compensate the adoptive parents for the expenses incurred in caring for and raising of adopted children and is not intended to provide a profit to the adoptive parents so as to operate as an additional

incentive to encourage adoption (MCL 710.48; MSA 27.3178[555.48]).

4. PARENT AND CHILD — ADOPTION — ADOPTION SUPPORT SUBSIDY — WORDS AND PHRASES — STATUTES.

    The term "changed conditions" as used in the adoption support subsidy provisions of the Michigan Adoption Code means an alteration of circumstances which causes the adoption to cease being a financial burden in the absence of the subsidy or circumstances in which the subsidy funds are wrongfully diverted to uses other than the support of the children (MCL 710.48; MSA 27.3178[555.48]).

5. PARENT AND CHILD — ADOPTION — ADOPTION SUPPORT SUBSIDY — APPEAL.

    A determination by a probate court that an adoption support subsidy should be terminated by reason of the wrongful diversion of the subsidy to uses other than the support of the adopted children is reviewed by the Court of Appeals to determine whether the findings of the probate court as to the diversion of such subsidy are clearly erroneous.

*Jason, Jason & Finkbeiner, P.C.* (by *Gifford D. Smith*), for petitioners.

*John L. Thompson,* Prosecuting Attorney for Schoolcraft County, for respondent.

Before: R. B. BURNS, P.J., and T. M. BURNS and CYNAR, JJ.

CYNAR, J. On January 23, 1979, an order was entered by the Schoolcraft County Probate Court affirming the termination of the adoption subsidies of petitioners' two adopted children, April Ann and Daniel James Klaus. Petitioners appeal by leave granted on January 16, 1980.

The minors were placed as foster children with petitioners in August 1973, after they had been removed from their natural parents on grounds of neglect. The children were made permanent wards of the court on May 21, 1974.

Petitioners filed a petition for adoption on December 8, 1976, and requested an adoption support subsidy for each child and a medical subsidy for April Ann under MCL 710.48; MSA 27.3178(555.48). That statute provides, in pertinent part:

"(1) When a petition has been filed to adopt a child, the court may pay to the adopting parent or parents, without respect to the income of the adopting parent or parents, either or both of the following subsidies:

"(a) For support of the child who was in foster care for not less than 4 months prior to petition for adoption, a subsidy not to exceed the established foster care rate that could have been paid for the same child by the department.

"(b) For medical, surgical, hospital, and related expenses due to a physical, mental, or emotional condition of the child which existed before the adoption, a subsidy, which may be ordered at any time."

In order to grant a subsidy, a court must find either (1) that the placement is the only one in the best interests of the child or (2) that efforts have been made to place the child and that no other persons are willing to adopt the child without a subsidy. MCL 710.48(2)(d); MSA 27.3178(555.48)(2)(d).

At a hearing held April 5, 1977, petitioners withdrew their request for a medical subsidy after indicating that medical care would be covered by their insurance. Testimony at the hearing showed that, because the children had developed emotional ties with the petitioners and adoption with a new placement would be detrimental, the best interests of the children would be served if they remained permanently in petitioners' home. By an order entered April 22, 1977, the court granted the maximum subsidy allowable.

The Michigan Adoption Code provides the following regarding the continuation of an adoption subsidy:

"A subsidy shall continue until the child becomes 18 years of age, becomes emancipated, or dies, or until the further order of the court, whichever occurs first. A subsidy shall continue even if the adopting parent or parents leave the state. As a condition for continuation of a subsidy, the court shall require the adopting parent or parents to file a sworn report with the court at least once each year as to the location of the child and other matters relating to the child as the court determines, but not including the financial condition of the parent or parents. On the basis of the report or information received by the court at any time indicating changed conditions, other than financial conditions, a subsidy may be discontinued by order of the court. A subsidy shall not affect the legal status of the child, nor the rights and responsibilities of the adoptive parent or parents as provided by law." MCL 710.48(3); MSA 27.3178(555.48)(3).

Petitioners filed an undated report on the two children on May 10, 1978, indicating the children were adjusting well to their adoptive home. The probate court ordered an investigation on July 11, 1978, and a report was filed by a juvenile officer two days later. That report focused on the family's financial status. Without holding a hearing, the probate court ordered the subsidies terminated on August 15, 1978.

Petitioners appealed to circuit court, which heard the appeal and reversed and remanded, apparently unaware that petitioners' appeal as of right was to this Court and not the circuit court under MCL 710.65; MSA 27.3178(555.65). The probate court was ordered to give proper notice to all

interested parties, to hold a hearing and to make written findings of fact and conclusions of law.

A hearing was held December 19 and 28, 1978. The juvenile department officer who investigated the case testified that he observed no adverse change with the children in their adoptive home. He said that the farm and home had not been altered. He testified that Thomas Klaus had told him he needed the subsidies to maintain the family's lifestyle, but that he loved the children and would keep them even if the subsidies were terminated.

Petitioner, Thomas Klaus, testified that the children were improving in their home. He was then questioned about his home, his strawberry crop and the irrigation system he used for his strawberries. Klaus admitted that he had filed the annual report late, but said he had been unaware of the need to file such a report. He indicated that he understood the subsidies were granted because of his family's financial situation. Klaus indicated that he had used the subsidies to help pay various bills relating to the upkeep of the home.

On December 28, 1978, petitoner Karen Klaus testified, indicating she believed that the subsidies had been provided for the family's financial help. She said that the children were improving continually in their home. She also admitted that the first annual report had been filed late and expressed some confusion about the need to have the report notarized.

The probate court issued findings of fact on January 23, 1979, affirming its previous order that terminated the subsidies. The court found that the subsidies were intended for the support of the children, that a subsidy could be terminated by order of the court without a hearing, and that the petitioner had not filed a sworn report as required by statute. The court further found:

"The record has shown that, at the time of the adoption, the Klaus' indicated that love and affection was their motive and overriding factor to bring these children into their home, but the testimony and other information now shows that their emphasis has now substantially changed, in that the subsidy has been used for payments of their own obligations, and that the subsidy for support has not been a consideration.

"It is clear that these are significant changed conditions since the support payments are being utilized for debts of the Klaus', and certainly the children are not responsible for the debts of their parents."

Petitioners now bring this appeal.

Petitioners' contention that the trial court relied on secret, undisclosed information in reaching its result appears unfounded. It is true that the trial court's opinion stated that it could discontinue the subsidy based on "other information" received by the court (in addition to the testimony taken at the hearing). It is, however, apparent that the trial court was simply reciting its statutory authority, MCL 710.48(3); MSA 27.3178(555.48)(3). The record shows that the information relied on by the trial court consisted of the testimony taken at the hearing plus the annual report filed by petitioners under the section just cited and the investigation report filed by the juvenile department. Petitioners prepared the former report and both reports were read into the record, so there can be no inference that any of the information therein was concealed. Petitioners were represented by counsel at the hearing, and if there was some reason to believe that undisclosed information was before the court, counsel could have requested disclosure. In fact, we see nothing more than a strained and unwarranted inference to support this argument. Therefore, it is not grounds for relief.

Petitioners' constitutional challenge to the stat-

ute is based on the proposition that the trial court interpreted the statute to allow a discontinuance of the subsidies based on "secret information". We see no such interpretation in the trial court's order, and petitioners' challenge is thus without merit.

Although the issue of whether petitioners are entitled to a hearing is not relevant to this case (a hearing was, in fact, held), we note that, even after the hearing in the instant case, the trial court insists that petitioners are not entitled to a hearing. Although we decline to rule on the question, it would appear, by analogy to *Goldberg v Kelly,* 397 US 254; 90 S Ct 1011; 25 L Ed 2d 287 (1970), that due process would require a hearing on the termination of the subsidies in the case at bar.

The important question in this case is whether the trial court acted properly in terminating the subsidies. The court advanced two justifications for termination: (1) failure to file the annual report as required by MCL 710.48(3); MSA 27.3178(555.48)(3), and (2) a finding of changed conditions in that petitioners' motive for adopting the children had originally been their love and affection for the children, but their "emphasis" had substantially changed and the subsidies were being used to satisfy the debts of petitioners and not for the support of the children.

We find that the failure timely to file the annual report was not a proper ground for termination in the instant case. The report in question was due on April 22, 1978 (the subsidy order having been entered April 22, 1977). The subsidies were terminated for a short time due to the failure to file the report, whereupon petitioners submitted a report and the subsidies were reinstated. This occurred some three months prior to the second termina-

tion, which is the subject of this appeal. The testimony at the hearings of December 19 and 28 showed that the failure to file the report was not willful but was a mistake due in part to the fact that the attorney who had handled the original adoption proceeding had left town and was no longer advising petitioners.

It was unfair and an abuse of discretion for the trial court to "revive" the matter of the late report as a technical ground for again terminating the subsidies. The reporting requirement was substantially complied with, and in view of the purpose of the statute as discussed below, such an inconsequential technical violation should not be used to terminate a subsidy, since such a practice would undermine the incentive for adoption which the subsidy provides.

As a second ground for its decision, the trial court found that the motive of petitioners had changed, and that the subsidies were being used to satisfy the debts of petitioners with no benefit to the adopted children.

The statute allows termination of a subsidy on the basis of "changed conditions, other than financial conditions". MCL 710.48(3); MSA 27.3178(555.48)(3). Unfortunately, there is no guidance given as to what is meant by changed conditions, and no case law addresses the question.

Petitioners draw an analogy to child support cases to suggest what the Legislature meant by "changed conditions". In child support cases, one of the foremost concerns is the financial circumstances of the parties—their assets and their ability to earn money. *Hakken v Hakken,* 100 Mich App 460; 298 NW2d 907 (1980). This analogy must fail in the instant case because the Legislature has specifically excluded financial conditions from consideration in adoption subsidy cases.

An inference may be drawn from a reading of MCL 710.48(1); MSA 27.3178(555.48)(1) that the purpose of the subsidy is to encourage the adoption of children who are in foster care for over four months by relieving the financial burden of adoption. A reading of MCL 710.48(3); MSA 27.3178(555.48)(3) reveals that the subsidy, once granted, is meant to continue until the child reaches age 18, unless some change occurs which obviates the need for the subsidy. The fact that changed financial conditions are *not* to be considered as a ground for terminating the subsidy further supports the inference that the subsidy is intended as an incentive to the adoption.

We note also that the subsidy is, by the language of MCL 710.48(1)(a); MSA 27.3178(555.48)(a), a *support* subsidy. In plain language, this means that the subsidy is meant to compensate the adoptive parents for the expense incurred in caring for and raising the children. It is not, therefore, intended to provide a profit to the adoptive parents as an additional incentive to the adoption.

We therefore interpret the term "changed conditions" to mean at least an alteration of circumstances which causes the adoption to cease being a financial burden to the parents in the absence of the subsidy. This interpretation is supported by the fact that the specific events listed in the statute as triggering automatic termination are also those which terminate support expenses (emancipation, death and the reaching of the age of 18, which is presumably the age at which the child could accept responsibility for his own needs).

We cannot ignore the fact that the subsidy is also terminable as a penalty for failure to file the required annual report. This leads us to conclude that termination of the subsidy may also be used

as a penalty for abuse of the subsidy. We therefore interpret the term "changed conditions" to include circumstances in which the subsidy funds are wrongfully diverted for uses other than the support of the children.

This is precisely the second ground for termination found and relied on by the trial court. It thus remains for us to determine whether the trial court's findings of fact were clearly erroneous. *Hartford Ins Group v Mile High Drilling Co,* 96 Mich App 455, 461; 292 NW2d 232 (1980).

The trial court's decision is clearly erroneous insofar as it states that the subsidies have been diverted to the benefit of petitioners to the *exclusion* of the adopted children. It is clear that the adopted children are living in the home of petitioners and are benefiting from the payment of petitioners' appropriate expenses out of subsidy funds.

It is also true, however, that the record supports an inference that the subsidy funds may have been applied to discharge the obligations of petitioners beyond what is required to alleviate the financial burden of caring for the adopted children. What needs to be determined, but cannot be from the record as it now stands, is a question of accountability: whether petitioners have used an amount of money equivalent to the subsidies for the benefit of the adoptive children.

We believe that an honest assessment of the situation is that there has been no change in conditions but that from the outset the subsidies may have been, in part, misapplied. We also believe that there has been no willful abuse of the funds but that petitioners assumed in good faith that the subsidies could be used to enhance the home environment of the entire family.

Under our analysis, there is a question as to whether the trial court had adequate reason to terminate the subsidies. The statute vests the trial court with discretion, but since a proper exercise of discretion should be based on accurate information and since the petitioners should have an opportunity to present their case with respect to the concise issue involved, we remand the case for a further hearing at which petitioners may present evidence as to what extent the subsidies have been utilized for purposes attributable to the support of the children. If the court finds that a substantial portion of the funds have been utilized for other purposes, then it should enter its finding to that effect and the termination of the subsidies should stand.

Finally, we note a possible alternative. Because the hearings already held indicate that the adopted children are doing well and have been well cared for, the most equitable solution might be to reduce the subsidies to an appropriate level, if the level of payment, in fact, has been set so high that there remains a surplus that the petitioners have applied to their own debts.

Remanded for further proceedings in accordance with this opinion.