IN THE MATTER OF DEMBEK

Docket No. 80531. Submitted April 17, 1985, at Lansing.—Decided August 20, 1985.

Petitioners, Donald and Rhonda Dembek, became the adoptive parents of Christopher M. Dembek after the child had been in the foster care of the Dembeks for 15 months. Prior to the adoption the Department of Social Services determined that Christopher was in need of ongoing psychological therapy and recommended that the petitioners be granted a medical adoption subsidy to cover expenses of Christopher's care. The probate court granted an adoption subsidy for "100% of the cost of psychological testing and regular and continuous therapy". The subsidy order was authorized under the statute then in effect. A new subsidy act was passed shortly thereafter which transferred the administration of adoption subsidies from the probate courts to the DSS. Three years after the adoption it was determined that Christopher required full-time hospital care. The DSS notified petitioners that it would provide only a partial subsidy because the balance of the costs would be covered through private and public insurance benefits. Petitioners refused to submit bills for Christopher's care to their private insurer, relying on the court's 100% subsidy order. The DSS thereupon withdrew any subsidy. Petitioners requested a hearing, at which the DSS held that it was authorized under both the old and the new acts to require petitioners to exhaust private insurance benefits before obtaining medical subsidy payments. Petitioners appealed to the Genesee County Probate Court, which affirmed, Luke Quinn, J., holding that the earlier court order authorized subsidy payments only for expenses not covered by medical insurance. Petitioners appealed. *Held:*

    1. The rights and obligations of the petitioners in obtaining the subsidy are to be determined from the probate court's

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Courts §§ 26, 51-55.

[2] Am Jur 2d, Statutes §§ 145, 146.

[3, 4] Am Jur 2d, Adoptions §§ 83 *et seq.*

See the annotations in the ALR 3d/4th Quick Index under topic Adoption of Children.

subsidy order. That order contains no reference to the use of available private insurance benefits for Christopher's treatment, nor can such a condition be inferred.

2. The court-ordered subsidy was a proper exercise of the probate court's authority under the former statute. That statute did not require the exhaustion of private insurance benefits, and no such exhaustion of benefits was intended by the Legislature.

3. The new subsidy statute, which became effective after the entry of the order in this case, does not control this case.

4. The Court rejected the DSS's argument that petitioners are disqualified from receiving any subsidy because they have not exhausted available public benefits.

Reversed and remanded.

1. Courts — Orders.

A court speaks only through its orders.

2. Appeal — Judicial Construction.

The Court of Appeals, in construing a statute, must ascertain and give effect to the intent of the Legislature and is bound by language of the statute which is plain and unambiguous.

3. Adoption — Adoption Subsidy — Private Health Insurance.

The former adoption subsidy statute did not require, either expressly or inferentially, adoptive parents to first resort to private health insurance as a condition of eligibility for receipt of a subsidy for health care of the adopted child upon order of the probate court (MCL 710.48; MSA 27.3178[555.48]).

4. Adoption — Adoption Subsidy — Qualification for Benefits.

An adoptive parent is not disqualified from receiving an adoption subsidy from the Department of Social Services as ordered by a probate court by the parent's failure to submit a claim for benefits to the parent's private insurance carrier and thereby qualify for available public benefits through the Department of Mental Health or Medicaid; the failure to involve the parent's private insurer does not, under the terms of the court order or the former statute upon which the order was based, disqualify the parent from receiving the subsidy for failing to exhaust available public benefits (MCL 710.48; MSA 27.3178[555.48]).

*William M. Ellenstein,* and *Bodman, Longley & Dahling* (by *James J. Walsh),* of counsel, for petitioners.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Erica Weiss Marsden,* Assistant Attorney General, for the Department of Social Services.

Before: DANHOF, C.J., and M. J. KELLY and M. E. DODGE,* JJ.

PER CURIAM. This is an appeal as of right from an order of the probate court affirming an administrative order of the Department of Social Services (Department). The administrative order limits the petitioners' right to obtain payment of medical expenses incurred in the psychological treatment of their adopted son, Christopher Dembek. Although the Department issued its order after a full evidentiary hearing, we have not been provided a transcript of that administrative hearing in the record on appeal. Since the relevant facts are not in dispute as set forth in the administrative order and in the probate court file we find that we can resolve the issues of law presented without benefit of the administrative transcript. We reverse.

In April of 1980, petitioners became the adoptive parents of Christopher Dembek, born May 18, 1971. Christopher had been neglected and abused by his biological mother and had been in the Dembeks' foster care for approximately 15 months preceding the adoption. While Christopher was in foster care awaiting disposition of the Dembeks' adoption petition, the Department drafted a report and filed it with the probate court. The Department determined that Christopher needed "regular ongoing therapy" and recommended that his adoptive parents be granted their request for a medical subsidy "to cover any ongoing expenses

---

* Circuit judge, sitting on the Court of Appeals by assignment.

related to Christopher's emotional problems". By order of April 7, 1980, the probate court granted a medical subsidy for "100% of the cost of psychological testing and regular and continuous therapy".

Christopher's medical subsidy was authorized under the adoption subsidy act which, prior to October of 1980, provided:

"(1) When a petition has been filed to adopt a child, the court may pay to the adopting parent or parents, without respect to the income of the adopting parent or parents, either or both of the following subsidies:

"(a) For support of the child who was in foster care for not less than 4 months prior to petition for adoption, a subsidy not to exceed the established foster care rate that could have been paid for the same child by the department.

"(b) For medical, surgical, hospital, and related expenses due to a physical, mental, or emotional condition of the child which existed before the adoption, a subsidy, which may be ordered at any time.

"(2) The court shall enter an order:

"(a) Fixing the amount in the event of a support subsidy under subsection (1)(a).

"(b) Identifying the physical, mental, or emotional condition which existed before the adoption that is to be covered by subsidy under subsection (1)(b) without fixing an amount unless known with certainty.

"(c) Requiring that all other available public moneys be used before authorization of a subsidy under subsection (1)(b).

"(d) Containing a finding by the court that placement with the petitioner is the only placement in the best interests of the child or that after taking testimony from the social agency responsible for placing the child for adoption, efforts have been made to place the child and it does not have notice of any other persons who are presently willing and qualified to adopt the child without a subsidy.

"(3) A subsidy shall continue until the child becomes 18 years of age, becomes emancipated, or dies, or until

the further order of the court, whichever occurs first. A subsidy shall continue even if the adopting parent or parents leave the state. As a condition for continuation of a subsidy, the court shall require the adopting parent or parents to file a sworn report with the court at least once each year as to the location of the child and other matters relating to the child as the court determines, but not including the financial condition of the parent or parents. On the basis of the report or information received by the court at any time indicating changed conditions, other than financial conditions, a subsidy may be discontinued by order of the court. A subsidy shall not affect the legal status of the child, nor the rights and responsibilities of the adoptive parent or parents as provided by law." MCL 710.48; MSA 27.3178(555.48).

Soon after the adoption and subsidy orders were entered in this case, the Michigan Legislature repealed MCL 710.48; MSA 27.3178(555.48) by enacting 1980 PA 288, effective October 17, 1980. A new adoption subsidy act was passed under 1980 PA 292, now codified at MCL 400.115f; MSA 16.490(25f). The new act transferred the administration of the adoption subsidy program from the probate court to the Department and introduced several substantive changes. It is not disputed, however, that the subsidy order entered in this case was authorized under the former act.

The probate file reveals that, for several years after the Dembeks' adoption of Christopher, bills incurred for psychological testing and therapy were paid by the Department pursuant to the subsidy order. In May of 1983, however, Christopher's condition worsened and he required full-time residential treatment at Arnell Engstrom Children's Center in the Michigan Department of Medical Health Facility at Traverse City, at the cost of $271 per day. The Department does not

challenge the need for residential treatment in this case.

Shortly after Christopher was hospitalized, the Department notified petitioners that it would provide a medical subsidy of only $75 per month under the 1980 subsidy order because it had determined that the balance of Christopher's medical costs at the Children's Center would be covered through private and public insurance benefits. Donald Dembek receives private insurance coverage for his family as a benefit of his employment, although the exact terms of coverage for Christopher's psychological treatment have not been developed below. In any event, petitioners refused to submit Christopher's bills to their private insurer, relying instead on the 100% subsidy order. The Department thereafter withdrew any medical subsidy on the ground that the petitioners had refused to exhaust all available public and private insurance benefits.

Petitioners obtained an administrative hearing on March 23, 1984, at which they challenged the authority of the Department to require the exhaustion of private insurance benefits. In an order dated May 2, 1984, the hearing officer concluded that both the former and current adoption subsidy acts authorize the Department to require exhaustion of private insurance benefits as a prerequisite to obtaining medical subsidy payments.

Petitioners then appealed to the probate court, which affirmed in a decision rendered August 29, 1984. The probate court concluded that the subsidy order authorized subsidy payments only for "those expenses not covered by medical insurance". The court noted that for at least 14 years, the Genesee County Probate Court had routinely required bills to be submitted to private insurance carriers prior to authorizing adoption subsidy payments. The

court further opined that to do otherwise would be contrary to the interests of Michigan taxpayers. We cannot agree.

Petitioners' rights and obligations in obtaining reimbursement for Christopher Dembek's mental health expenses are the judicial creations of the probate court. Since a court speaks only through its orders, *Tiedman v Tiedman,* 400 Mich 571, 576; 255 NW2d 632 (1977), we must look to the adoption subsidy order of April 7, 1980, to determine whether petitioners are required to exhaust their private insurance benefits prior to obtaining subsidy payments from the Department for the cost of Christopher's residential treatment at Arnell Engstrom Children's Center.

The probate court's subsidy order contains no reference to the use of available private insurance benefits for the mental health treatment of Christopher Dembek. The order initially sets forth, as required by statute, certain findings regarding Christopher's foster care history, his adoption prospects and his need for "regular ongoing therapy". The order then grants to petitioners a subsidy:

"for medical, surgical, hospital and related expenses due to a physical, mental or emotional condition of the child which existed before the adoption, *namely 100% of the cost of psychological testing and regular and continuous therapy,* and for similar expenses hereafter incurred upon presentation to the Court by petitioners of properly documented expenses, the necessity and reasonableness of which have been approved by the Court or the Department of Social Services prior to the incurring of such expenses, said payments to be payable upon proper documentation commencing with the date of placement of the child with the petitioners and to continue thereafter until the child becomes 18 years of age, becomes emancipated or dies, or until the further order of the Court, whichever first occurs." (Emphasis added).

The only conditions imposed upon petitioners in qualifying for subsidy payments are (1) the filing of an annual report and (2) use of "all other available public moneys".

Clearly, the adoption subsidy order in this case does not expressly require petitioners to exhaust their insurance benefits as a condition precedent to subsidy payment. Nor can we infer such a condition from our reading of the order in its entirety. To the contrary, we are persuaded that the probate court intended to completely relieve petitioners of the financial burden of providing for Christopher's mental health care. Had the court otherwise intended, it could have easily included in the order a provision requiring petitioners to exhaust available private insurance benefits similar to the statutory provision which requires petitioners to exhaust all available public benefits.

We further note that the order requires petitioners to notify the court of "any change in conditions on which the subsidy is based" but expressly excludes from the reporting requirement any changes in the financial condition of the adoptive parents. We interpret this as additional evidence of an intent on the part of the probate judge to grant a 100% medical subsidy regardless of the financial resources available to petitioners. There is no evidentiary record of a pattern of practice of the Genesee County Probate Court with regard to medical adoption subsidies under the old subsidy act. Our task in this case is simply to interpret the plain language of the subsidy order issued and we find nothing in that order which requires petitioners to exhaust private insurance benefits prior to obtaining subsidy payments from the Department for expenses incurred in Christopher's mental health care.

The only significant question remaining is

whether the subsidy order, as we construe it, constitutes a proper exercise of the probate court's authority under the adoption subsidy act then in effect. MCL 710.48; MSA 27.3178(555.48). We find the order valid as entered despite respondent's arguments to the contrary.

In construing MCL 710.48; MSA 27.3178(555.48), we must ascertain and give effect to the intent of the Legislature in enacting that statute. *In re Condemnation of Lands,* 133 Mich App 207, 210-211; 349 NW2d 261 (1984). We are bound by its plain and unambiguous language. *Cole v DAIIE,* 137 Mich App 603, 608; 357 NW2d 898 (1984).

The adoption subsidy act in effect in April of 1980 did not expressly mandate the exhaustion of all available private insurance benefits as a condition for payment of subsidized costs. Nor is there language in the statute expressly permitting the probate court to require exhaustion of private insurance benefits in certain cases. In other words, the statute is completely silent on this subject.

Respondent argues that we should, nevertheless, infer from the overall language and purpose of the statute an intent on the part of the Legislature to require adoptive parents with medical subsidies to first resort to private insurance. Our review of the statute and its brief appellate history leads us to the opposite conclusion. MCL 710.48; MSA 27.3178(555.48) expressly authorizes the probate court to grant a subsidy "without respect to the income of the adopting parent or parents". Clearly, the adoptive parents' private financial resources were not to be considered by the probate court in considering whether to grant an adoption subsidy. The Legislature must have known that adoptive parents often have available to them private insurance benefits which would cover, duplicate, or overlap the same expenses covered un-

der a subsidy order. Yet, the Legislature failed to require the exhaustion of these benefits. We find that this omission was intentional, particularly in light of the provision which requires adoptive parents to exhaust any available public benefits prior to obtaining payment under the subsidy order. MCL 710.48(2)(c); MSA 27.3178(555.48)(2)(c).

We believe, furthermore, that a legislative decision to disregard the adoptive parents' insurance benefits comports with the purpose of the subsidy act, which is to encourage the adoption of children that are "hard to place". *In the Matter of Klaus,* 108 Mich App 394; 310 NW2d 394 (1981). See also *In the Matter of Richard P,* 403 Mich 173; 267 NW2d 911 (1978). In our view, the alleviation of financial burdens associated with the adoption of children in need of special care is one responsible method of promoting permanent placement of older or handicapped children while simultaneously reducing the taxpayers' overall burden in providing for their care. In the instant case, for example, the Dembeks have provided Christopher with a permanent home and have relieved the taxpayers of the financial obligation of providing for all but the mental health cost of Christopher's care. The Legislature's reluctance to impose a private insurance exhaustion requirement under the subsidy act is understandable. There is always the danger that adoptive parents might refrain from adopting a child with special medical needs for fear that, under their insurance policy, benefits will be depleted in caring for a child's pre-existing condition, thus leaving them liable and uninsured for any medical costs related to "post-adoption" conditions.

We conclude that the probate court's subsidy order in this case does not require petitioners to exhaust their private insurance benefits before

qualifying for subsidy for the cost of Christopher's medical care at Arnell Engstrom Children's Center. We further hold that the order is valid under the adoption subsidy act in effect at the time it was issued. We decline to consider arguments made by the parties with regard to the new adoption subsidy act, MCL 400.115f; MSA 16.490(25f), since that act did not become effective until after the entry of the order in this case. We note only that the new subsidy act provides that "parents receiving a subsidy under [MCL 710.48; MSA 27.3178(555.48)] shall continue to receive a subsidy for which they qualified" under that act. We thus express no opinion regarding the Department's issuance and administration of subsidy orders pursuant to 1980 PA 292.

Finally, we reject the Department's arguments regarding the availability of other public funds but for petitioners' refusal to submit Christopher's bills to their insurance carrier. The Department's scenario begins with the undisputed premise that petitioners must exhaust all available public benefits in order to qualify for the subsidy. The Department then points out that: (1) Christopher's status as a resident of a state facility qualifies him for public benefits administered through the Department of Mental Health, and (2) Christopher qualifies for benefits under Medicaid. However, in order to qualify for benefits through either of these two sources, petitioners must involve their private insurance carrier, which they have consistently refused to do. The Department thus concludes that petitioners have failed to exhaust available public benefits and are disqualified under the terms of the subsidy order and under MCL 710.48; MSA 27.3178(555.48).

In our view, the Department's position in this regard is nothing more than a side-long attempt to

accomplish indirectly what it cannot directly accomplish through the subsidy order or adoption subsidy statute. We decline to impose this bureaucratic interpretation on adoptive parents who, unaware of the plethora of state benefit programs and attendant qualifications, take the difficult step of adopting a hard to place child in reliance on some would-be illusory promise of assistance from the state. The Legislature could not have intended such a result when it enacted the adoption subsidy act.

We realize that our decision does not provide the Department with any formula or rule for administering the adoption subsidy act in light of these other benefit programs. That task is best left to the agencies charged with the responsibility of dispensing benefits. We point out, however, that, with regard to public benefits available through the Department of Mental Health, *use* of private insurance benefits is not required under the Mental Health Code, MCL 330.1800 *et seq.;* MSA 14.800(800) *et seq.* Rather, the amount of money available through private insurance is used to compute the parents' ability to pay. MCL 330.1814; MSA 24.800(814). Perhaps this "parent-pay" amount would be a standard for measurement of the amount for which the Department is liable under the subsidy order. We further note that the Medicaid program is administered by this Department, MCL 400.105(1); MSA 16.490(15)(1), and it thus should not be too difficult for the Department to promulgate rules which give effect to both the Medicaid and adoption subsidy acts.

Reversed and remanded. Jurisdiction is not retained. No costs, a public question being involved.