v.

**MISSOURI DEPARTMENT OF SOCIAL SERVICES, Respondent,**

No. WD 39541.

Missouri Court of Appeals, Western District.

April 19, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 1988.

Application to Transfer Denied July 26, 1988.

Candace M. Zierdt, Legal Aid of Western Missouri, Kansas City, for appellant.

Catherine A. Schulte, Independence, for respondent.

Before COVINGTON, P.J., and SHANGLER and PRITCHARD, JJ.

COVINGTON, Judge.

Ms. J.P. appeals from a decision of the Circuit Court of Jackson County affirming the decision of the Director, Division of Family Services, Missouri Department of Social Services, who upheld the Division's termination of adoption subsidy payments to J.P. for her adopted daughter. Reversed and remanded with instructions.

In the summer of 1977, J.K.P. was placed in foster care in the home of Ms. J.P. Ms. J.P. petitioned for adoption of J.K.P. The decree of adoption was entered in November, 1981.

At the time of the adoption proceedings, Ms. J.P. earned approximately $16,000.00 per year. The Division of Family Services determined Ms. J.P. eligible to receive an adoption subsidy for J.K.P.

Ms. J.P. lost her job in January, 1982, and began to experience medical problems. In the fall of 1984, Ms. Wheaton–Weston, the caseworker from the Division of Family Services of the Missouri Department of Social Services (the Division), renegotiated the adoption subsidy agreement between Ms. J.P. and the Division. The agreement provided for a long-term subsidy in the amount of $194.00 per month, which, at that time, was the maximum subsidy payment authorized by the Division. The subsidy was for "expenses related to the child's day-to-day living," according to the agreement.

In May of 1985 the Social Security Administration notified J.P. that a lump-sum award of $1,385.00 plus $232.00 per month had been made and would be paid her for J.K.P. The payments were disability insurance benefits for the child based upon J.P.'s disability. The payments for J.K.P. were in addition to $480.00 per month which J.P. received for herself.

On August 13, 1985, Ms. Wheaton–Weston wrote a letter to J.P. giving notice of termination of subsidized room and board payments. The letter of notice made reference to an agency policy requiring the Division to consider Social Security benefits when determining subsidized room and board eligibility. The letter stated: "Whenever these benefits are the same or higher than the standard room and board rate of this agency, the child is determined to be ineligible for this service."

Ms. J.P. filed a timely notice of appeal. A hearing was held before the Director of the Division on August 14, 1986. At the hearing, Ms. Wheaton–Weston testified that the decision to terminate the adoption subsidy payments to J.P. was based solely on the child's receipt of Social Security benefits, and the decision did not involve consideration of the continuing need for the subsidy based on expenses. The Division relied upon its new policy which required use of Social Security and SSI benefits to supplement subsidy funds.

At the hearing, J.P. testified that J.K.P. had many needs for which J.P. was unable to provide. J.P. stated that she could not meet the expenses of rent, lights, telephone, groceries, insurance, and doctors, nor provide therapy for J.K.P.'s posture problem. She stated that J.K.P. was hyperactive and that she wanted to put J.K.P. in a special school. The Director affirmed the Division's action. On J.P.'s appeal to the circuit court, the Director's decision was affirmed.

On appeal to this court, J.P. asserts that the Director's decision was unauthorized by law because 1) the Division had no authority to terminate the adoption subsidy agreement without the concurrence of the adoptive parent, and 2) even if the Division did have authority to terminate the contract, the Division was not authorized to do so without considering the needs of the child.

The benefits at issue in this case are part of a jointly sponsored state-federal plan for encouraging adoption of foster children having special needs. A child is considered to have special needs if the state has determined that the child cannot or should not be returned to the home of the natural parents, and the child's ethnic background, age, membership in a minority or sibling group, or physical, mental, or emotional handicaps or medical needs make it unlikely that the child could be placed with adoptive parents without assistance. 42 U.S.C. § 673(c). Adoption subsidy payments provide an incentive, especially to economically borderline families, to adopt these children with special needs who otherwise would continue to live with the uncertainty of foster care and without the benefits of a permanent home. The Missouri statutes governing adoption, §§ 453.010 to 453.400, RSMo Supp.1985, are to be construed "so as to promote the best interests and welfare of the child in recognition of the entitlement of the child to a permanent and stable home." § 453.005, RSMo Supp 1985.

The adoption assistance program pursuant to which J.P. received adoption subsidy payments has been in effect in Missouri since 1973. *See* L.1973, H.B. 254 §§ 453.-052(2), (3) and (4). Federal financial participation was made available to states with qualifying adoption assistance programs by enactment of the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 620–628 and 670–677. In order to ensure that the State continues to be eligible for federal financial participation, the Missouri Legislature has required the Division of Family Services to comply with all federal laws relating to adoption subsidies. § 453.074(1)(6), RSMo Supp.1985.

The relevant federal laws relating to foster care and adoption assistance are codified at 42 U.S.C. §§ 670–676 (Title IV–E of the Social Security Act) (1983). Section 42 U.S.C. § 673(a)(2) provides:

(2) The amount of the adoption assistance payments shall be determined through agreement between the adoptive parents and the State or local agency administering the program under this section, which shall take into consideration the circumstances of the adopting parents and the needs of the child being adopted, and may be readjusted periodically, with the concurrence of the adopting parents (which may be specified in the adoption assistance agreement), depending upon changes in such circumstances. However, in no case may the amount of the adoption assistance payment exceed the foster care maintenance payment which would have been paid during the period if the child with respect to whom the adoption assistance payment is made had been in a foster family home.

Section 42 U.S.C. § 675(4) defines "foster care maintenance payment" as follows:

(4) The term "foster care maintenance payments" means payments to cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel to the child's home for visitation.

The amount of the foster care maintenance payment which would have been paid had the child remained in foster care determines the maximum amount that can be

paid under the adoption subsidy payment program.

The Missouri adoption subsidy program provides that the Division and the adoptive parent must enter into an agreement within thirty days after the grant of the subsidy is authorized. § 453.073(3). Federal law requires the adoption assistance agreement to be binding on both the adoptive parents and the agency administering the program. 42 U.S.C. §§ 673(a)(2) (quoted supra), 675(3). Among other terms, the agreement is to set forth the amount of assistance payments. § 453.073(3)(2). Under Missouri law, the amount of the adoption subsidy is to be determined according to § 453.073(1), which provides in relevant part:

> Determination of the amount of monetary need is to be made by the Division in reference to the needs of the child, including consideration of the mental condition, age and racial and ethnic background of the child in each case, provided that the subsidy amount shall not exceed the expenses of foster care and medical care for foster children paid under the homeless, dependent and neglected foster care program.

The Division based its decision to terminate the adoption subsidy payments to J.P. upon a Division regulation, 13 C.S.R. 40–34.012(3) and (4) (1983) (footnote added), which provides:

> (3) The maximum rates for foster care including room and board, clothing and incidental expenses for homeless, dependent and neglected children which are subject to reimbursement are: one hundred and thirty-nine dollars ($139) for ages zero to five (0–5) years; one hundred seventy dollars ($170) for ages six to twelve (6–12) years; and one hundred eighty-seven dollars ($187) for ages thirteen (13) and over.[1]

> (4) The division will reimburse for room and board based upon the maximum rates for foster care for homeless, dependent and neglected children minus other sources of income.

The Division contends that under subsection (4), J.P. would not have been entitled to receive a foster care maintenance payment under Missouri's Homeless, Dependent and Neglected Children Program (HDN) because the child's other sources of income exceeded the maximum rate for foster care. Consequently, the Division argues no adoption subsidy payment could be made because of the limitations imposed by 42 U.S.C. § 673(a)(2) and § 453.073(1), RSMo Supp.1985.

Assuming the validity and applicability of subsection (4), which are not challenged, the Division has misapplied its own regulation. In the case of J.P., the Division characterized the adoption subsidy as "subsidized room and board payments." Agency policy required the Division to consider Social Security when determining subsidized room and board eligibility. The policy provided that, whenever Social Security benefits were the same or higher than the standard room and board rate of the Division, the child was to be determined ineligible for the subsidized room and board.

In this case the adoption subsidy encompasses more than room and board. The agreement between the Division and J.P. provided that the Division would subsidize J.P. for expenses related to the child's day-to-day living.

Assuming, without deciding, that 13 C.S.R. 40–34.012(4) requires the Division to deduct social security disability insurance benefits when determining the extent to which room and board expenses are reimbursable, it does not follow that the receipt of benefits in excess of the foster care maximum would automatically render the child ineligible to continue to receive maintenance payments to cover other expenses. Foster care payments cover not only room and board, but also clothing and incidental expenses, school supplies, medical care, dental care and social services. 42 U.S.C. § 675(4); § 210.292(2), RSMo 1978; 13 C.S.R. 40–34.012(3). If a child were yet to have additional unmet reimbursable expenses, from which no deductions were authorized,

---

1. These rates have increased. It appears from the record that the maximum rate applicable to a child of J.K.P.'s age (9) was $194.00 at the time the agreement was executed.

the child would continue to be eligible to receive foster care maintenance payments. Under such circumstances, the Division would not be compelled to discontinue an adoption subsidy; neither would it be permitted to modify the adoption subsidy agreement by reducing or eliminating the payment without the concurrence of the adoptive parent. 42 U.S.C. § 673(a)(2).

Under the agreement, J.P. was required to report to the Division changes in household composition and expenses. The agreement provided that subsidy payments could be adjusted if indicated by these changes. J.P. had reported no changes in household composition or expenses which would have indicated a decreased need for the subsidy. No other events had occurred which required termination of the subsidy under the Division's policy.

The Division did not claim that J.P. had no further need for the subsidy. Indeed, the evidence was clear and uncontroverted that many of the child's needs were not being met even while the child had been receiving the maximum allowable subsidy payment. Agency policy explicitly provided that a subsidy plan could be developed using adoption subsidy funds to supplement an OASDI (disability insurance) grant if needed. Policy Memorandum of May 1, 1985, Procedure # D–16, Attachment A, § III(H). The Division admitted on the record that the sole basis for the decision to terminate the adoption subsidy to J.P. was the amount of Social Security income J.P. was receiving for the child. The continuing need for the subsidy based on expenses was not considered.

 The determination that the subsidy payment should be terminated was based upon the erroneous conclusion that receipt by a child of disability benefits in excess of the maximum rate for foster care automatically disqualifies the child from receiving a subsidy payment. Termination of an adoption subsidy payment must be based upon a determination by the agency that the actual need for the subsidy no longer exists, that the child is no longer eligible for the adoption subsidy program, or that the adoptive parents concur in the termination. 42 U.S.C. §§ 673(a)(2), (3). *See Matter of Klaus*, 108 Mich.App. 394, 310 N.W.2d 394, 398 (1981). In this case, the Division concedes that the child remains eligible for the program. The elimination of the adoption subsidy payment without consideration of the child's needs and without concurrence of the adoptive parent was error.

The judgment is reversed and remanded with directions to reinstate J.P.'s adoption subsidy benefits and to award retroactive adoption subsidy benefit payments from the date of termination.

All concur.