

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| B.R. AND M.S., for themselves and<br>As next friend of J.R., a minor child, | )<br>)<br>) | No. ED101941 |
| Appellants, | )<br>) | Appeal from the Circuit Court<br>of St. Louis County |
| vs. | )<br>) | Honorable Tom W. DePriest, Jr. |
| MISSOURI DEPARTMENT OF<br>SOCIAL SERVICES, et al., | )<br>)<br>) | |
| Respondents. | ) | FILED: May 12, 2015 |

B.R. and M.S. ("Appellants") appeal from the trial court's judgment involving administrative review of the decision and order of the Children's Division of the Missouri Department of Social Services ("the Division"), denying Appellants' request for an adoption care subsidy for the residential treatment of their daughter, J.R., at a specific residential care facility. We reverse and remand.

## I. BACKGROUND

J.R., born in November 1996, and her younger brother, J.A.R., born in November 1998, were placed in Appellants' foster care in August of 2000. Their biological father was incarcerated and their biological mother had a history of drug dependence and had given birth to J.R. while she was in her "mid to late teens." As a result of their early childhood circumstances, both children were considered "special needs" children by the Division. In 2001, Appellants

adopted four-year-old J.R. and her little brother J.A.R. through the Division (formerly known as the Division of Family Services). In February 2001, Appellants applied for an adoption subsidy agreement for J.R., noting that she may need residential treatment.[1] The Division approved the application and entered an adoption subsidy agreement ("Subsidy Agreement") for J.R., specifically covering maintenance, day care, and certain one-time expenses associated with J.R.'s adoption. The Subsidy Agreement also stated J.R. was eligible for Medicaid. The original Subsidy Agreement did not provide for residential treatment services for J.R., but the adoption subsidy plan prepared in conjunction with the Subsidy Agreement noted that "[r]esidential treatment services are requested should it be needed in the future." From 2001 through 2008, Appellants and the Division further entered into several subsidy agreement attachments that all continued to provide a subsidy to Appellants for J.R. for maintenance and day care and noting that J.R. was eligible for Medicaid.

In 2010, J.R.'s mental health needs required two hospitalizations: at St. John's Mercy Hospital in St. Louis and at CenterPointe Hospital in St. Charles. CenterPointe's licensed psychologist, Dr. Schiltte, entered his diagnostic impression on Axis I for J.R. as mood disorder, past sexual abuse of a child, post-traumatic stress disorder, "rule out reactive attachment disorder," attention deficit/hyperactive disorder, and "rule out" learning disorder. Appellants told the Division that they were experiencing difficult behaviors from J.R. and that they had to place J.R. in CenterPointe.

From the fall of 2011 through spring of 2012, J.R.'s mental health condition severely worsened; she repeatedly ran away from home, was sexually abused multiple times, became

---

[1] 13 CSR 35-38.010(1)(J) defines residential care as "[a] facility providing twenty-four (24) hour care in a group setting to children who are unrelated to the person operating the facility and who are unattended by a parent or guardian."

violent with family members, and dropped out of school. Appellants alleged her treatment needed to be increased significantly.

J.R.'s treating psychiatrist, Dr. Gary Boxer, recommended seeking residential care for J.R. She also was evaluated by CenterPointe, an in-patient psychiatric hospital where she was admitted and also was recommended for residential treatment. Based on the recommendations of Dr. Boxer and Angie Kovath, the child and adolescent therapist at CenterPointe, Appellants decided to seek residential treatment for J.R. Dr. Boxer and Ms. Kovath also recommended residential treatment specifically at Change Academy of the Lake of the Ozarks ("CALO"). In his May 21, 2012 letter, Dr. Boxer stated: "[g]iven [J.R.'s] history of foster care and adoption, I feel that the program offered at CALO would be well-matched to [J.R.'s] psychological needs." Dr. Boxer had been seeing J.R. as a patient since 2009 and diagnosed her as having "mood disorder and attachment disorder." He also stated that in his professional medical opinion, residential treatment at CALO is the least restrictive treatment setting and program appropriate for J.R.'s needs, and that the services offered at CALO are unique in Missouri and not available from any other provider of which he is aware.

Additionally, Ms. Kovath stated:

[o]ur treatment team feels as though [J.R.] exhibits several symptoms of Reactive Attachment Disorder. Although we have not had enough time treating [J.R.] to give her this as a concrete diagnosis, we feel it is likely. It is the treatment team's recommendation that residential treatment, specifically at CALO in Lake of the Ozarks due to their attachment focused therapy, is the next step in the course of treatment.[2]

Appellants also sought advice from a well-known expert for his work with reactive attachment disorder for children thirteen years and younger in the state of Washington, and he recommended only two places in the country: CALO and another facility in Quincy, Illinois.

---

[2] Attachment therapy is designed to increase the level of ability for any two parties to build a stronger connection or attachment, explained Ms. Emily Montgomery, the Division's program development specialist.

Appellants looked into both. Appellants testified that CALO was unique in providing an evidence-based tactic called didactic developmental therapy, which was one of the only therapies known to treat reactive attachment disorder effectively. Additionally, the outcomes from CALO impressed Appellants and gave them hope that CALO could make their daughter healthier. Appellants met with the director of the facility, the therapy director, the clinical director, the admissions director, and spoke with many of the children in the middle of treatment there, and then took the information to the Division for approval for J.R.

Appellants made an emergency request to the Division for residential treatment when J.R. was discharged from CenterPointe. Because CALO did not have any openings, Appellants testified that they "discussed nearly all the facilities in the eastern part of Missouri. It was determined that [Good Shepherd in St. Louis] would be the safest one for her" for residential treatment. The Division approved a subsidy for treatment of J.R. at a level four, residential treatment facility, although not for a specifically named facility. "Level four is considered our psychiatric care level," according to the Division. Appellants testified that they were told orally that J.R. was approved for a level "four plus" of residential treatment, but on the paper adoption subsidy amendment, it was a level four. Appellants signed the contract for residential treatment with a starting date of June 5, 2012, the day that J.R. was discharged from CenterPointe. The agreement did not restrict where J.R. could receive residential treatment. The adoption subsidy amendment added a maximum amount of $4,452.53 per month from June 5, 2012, to December 4, 2012, ($26,715.18- six month rate; $53,430.36- annual rate) for residential treatment of J.R. The Division has made considerations for higher payments in other cases, if a child was seen to meet the criteria for level "four plus," according to Division Program Development Specialist, Ms. Emily Montgomery. Good Shepherd, a level four residential treatment center, had a contract

4

with the Division to provide residential treatment. Residential facilities were paid directly by the Division. Ms. Montgomery testified that CALO's costs were more than twice that amount approved for J.R. Appellants testified that CALO cost a little more than $100,000 per year.

J.R. was placed at Good Shepherd on June 5, 2012, to receive residential treatment. However, J.R. ran away from there on the weekend of June 16-17 and did not return. Appellants requested that the Division approve the use of the adoption subsidy for CALO, although CALO did not have a contract with the Division to provide residential treatment services. Appellants were orally informed by the Division that their request was denied on June 19, 2012, and received the written notice approximately a month later, on July 17, 2012. The notice of denial stated, "CALO is not contracted with Children's Division via the Residential Contract." The notice did not specify any reasons why the Division refused to enter into a "child specific contract" with CALO. Appellants began the appeals process prior to receiving the written notice, however, and requested a fair hearing immediately. Although appealing the Division's denial during this time, Appellants did not want to delay treatment and placed J.R. at CALO at its reduced daily rate of $350 per day when a space became available there on June 21, 2012.

On August 28, 2012, Appellants' appeal of the Division's denial was heard before the Division's Administrative Hearing Unit. In that hearing, Ms. Montgomery testified on behalf of the Division. She stated that she made the initial determination to deny J.R. a child specific contract that would have provided a subsidy for J.R.'s treatment at CALO, but that her superiors were all part of making the decision. Ms. Montgomery testified that Appellants' request was denied because the Division had a "policy" prohibiting the use of adoption subsidy funds at residential facilities geared toward treating "attachment disorder." The Division did not offer any suggestions as to a Division-contracted service provider where J.R. could receive appropriate

5

treatment for her needs. Appellants introduced testimony from CALO's clinical director, Mr. Rob Gent, a Missouri-licensed professional counselor, discussing the uniqueness of CALO's adolescent residential treatment center in focusing on emotional attachment/relationships and self-regulation. Appellants also introduced undisputed expert medical opinion testimony from J.R.'s treating psychiatrist, Dr. Boxer, and testimony from J.R.'s adoptive mother.

On November 27, 2012, the Division's Director ("Director") issued its Decision affirming the Division's denial of Appellants' request for an adoption subsidy for J.R.'s residential treatment at CALO. The Director concluded that pursuant to 13 CSR 38-35.010(6)(F), the Division shall reimburse the adoptive parents for payments made directly by the adoptive parents to the provider where the provider of the service does not have a contract with the Division, only if the Division agrees in writing before the service is provided to make the payment and if all four conditions outlined in the regulation are met. The Director found insufficient evidence to satisfy the requirement of the regulation in that Appellants' testimony was insufficient to show that other residential facilities that contract with the agency were not reasonably available to provide services to meet the needs of J.R. The decision further stated that Dr. Boxer's affidavit is "unclear whether other services would reasonably meet the needs of [J.R.]," and "unclear" as to the "extent of Dr. Boxer's knowledge regarding Agency contract providers and the services which they offer." The Director's decision found that based on the evidence presented, including Appellant's testimony, Dr. Boxer's affidavit, and the evidence regarding the services offered at CALO, the Appellants were unable to establish that there was no service provider having a contract with the Division that was reasonably available to provide residential treatment for J.R. The decision of the Division was therefore affirmed by the Director.

6

Appellants timely filed their appeal with the Circuit Court of St. Louis County. Later, Appellants filed a five-count petition with the circuit court, seeking administrative review of the Director's decision and asserting several alternative claims arising out of the facts surrounding the Division's denial of Appellants' request. The Division filed a motion to dismiss Appellants' petition, which the circuit court granted on July 10, 2014. In its judgment, the circuit court affirmed the Director's denial of Appellants' request for an adoption subsidy specific to CALO.

This appeal follows.

## II.  DISCUSSION

Appellants raise four points on appeal. In their first point, Appellants allege the Division's decision to deny Appellants' request for an adoption subsidy for J.R.'s treatment at CALO is unsupported by competent and substantial evidence upon the whole record, is unreasonable, arbitrary and capricious, pursuant to review under Sections 536.140 and 208.110, as Appellants introduced competent, substantial and uncontroverted evidence showing entitlement to an adoption subsidy for residential treatment of J.R. at CALO through a "child-specific contract" under 13 CSR 35-38.010(6)(F).

Second, Appellants contend the Division erred in denying Appellants' request for a subsidy through a child specific contract with CALO because the Division's denial was contrary to law, pursuant to review under Sections 536.140 and 208.110, in that the agency relied on factors unstated in any statute or regulation in refusing to approve a child specific contract with CALO.

Third, Appellants allege the circuit court erred in dismissing portions of Count I, as well as Counts II through V of Appellant's Petition, with prejudice, because the circuit court had a duty to hear and determine all issues pleaded by Appellants within the scope of Sections 208.110

7

and 536.140 in reviewing the Division's administrative decision, as Appellants' claims were neither subject to administrative exhaustion nor were excluded from the scope of administrative review.

Lastly, Appellants allege the circuit court erred in dismissing counts II through V of Appellants' Petition on jurisdictional grounds because the court had a duty to hear such claims, either pursuant to administrative review under Sections 208.110 and 536.140, or alternatively, pursuant to the court's original jurisdiction under Section 536.050. Appellants argue the circuit court erred in refusing to hear Appellants' claims on the merits under either and in dismissing Appellants' claims with prejudice such that Plaintiffs are now potentially foreclosed from seeking judicial redress unless the circuit court's decision is overturned.

Because we reverse the decision of the Director denying Appellants' request for an adoption subsidy for J.R.'s treatment at CALO on Appellant's first point on appeal, we need not address Appellants' remaining points.

A. Standard of Review

"In an appeal following judicial review of an agency's administrative action, this Court reviews the decision of the agency, not the circuit court." Young v. Children's Div., State Dep't of Soc. Servs., 284 S.W.3d 553, 558 (Mo. banc 2009) (quoting TAP Pharmaceutical Prods., Inc. v. State Bd. of Pharmacy, 238 S.W.3d 140, 141 (Mo. banc 2007). "Pursuant to section 536.140.2, this Court reviews to determine 'whether the [Director]'s findings are supported by competent and substantial evidence on the record as a whole; whether the decision is arbitrary, capricious, unreasonable or involves an abuse of discretion; or whether the decision is unauthorized by law.'" TAP Pharmaceutical Prods, Inc., 238 S.W.3d at 141 (quoting Cmty. Bancshares, Inc. v. Sec'y of State, 43 S.W.3d 821, 823 (Mo. banc 2001). Substantial evidence is

8

"'evidence which has probative force on the issues, and from which the trier of facts can reasonably decide the case.'" Lagud v. Kansas City Mo. Bd. of Police Comm'rs, 227 S.W.3d 285, 290 (Mo. App. W.D. 2008) (quoting Brown v. Div. of Emp't Sec., 947 S.W.2d 448, 452 (Mo. App. W.D. 1997). Unimpeached or undisputed evidence cannot be disregarded unless the administrative agency makes a specific finding that such evidence is incredible or unworthy of belief. Id. at 292.

B.  Analysis

The adoption subsidy benefits at issue here are part of a jointly sponsored state-federal plan for encouraging the adoption of foster children having special needs. See J.P. v. Mo. Dep't of Soc. Servs., 752 S.W.2d 847, 849 (Mo. App. W.D. 1988).

> A child is considered to have special needs if the state has determined that the child cannot or should not be returned to the home of the natural parents, and the child's ethnic background, age, membership in a minority or sibling group, or physical, mental, or emotional handicaps or medical needs make it unlikely that the child could be placed with adoptive parents without assistance.

Id., citing 42 U.S.C. Section 673(c).  Adoption subsidy payments provide an incentive, especially to economically borderline families, to adopt these children with special needs who otherwise would continue to live with the uncertainty of foster care and without the benefits of a permanent home. J.P., 752 S.W.2d at 849.  The Missouri statutes governing adoption, Sections 453.010 to 453.400, RSMo Supp. 2007, are to be construed "so as to promote the best interests and welfare of the child in recognition of the entitlement of the child to a permanent and stable home." Section 453.005; J.P., 752 S.W.2d at 849.

The adoption assistance program has been in effect in Missouri since 1973. J.P., 752 S.W.2d at 849; see L. 1973, H.B. 254 Sections 453.052(2), (3) and (4).  Federal financial participation was made available to states with qualifying adoption assistance programs by

enactment of the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. Sections 620-628 and 670-677. In order to ensure that the State continues to be eligible for federal financial participation, the Missouri Legislature has required the Division to comply with all federal laws relating to adoption subsidies. Section 453.074(1)(6).

Pursuant to Section 453.073, the Division is authorized to grant a subsidy to an adopted child who qualifies; specifically, one who has been in the care and custody of the Division and is deemed to be "special needs," based on the child's age, race, mental and physical needs, according to the testimony of the Division's program development specialist, Ms. Montgomery. The statute provides that a written agreement shall be entered into by the Division and the parents to set forth the terms of the subsidy. Section 453.073. Federal law requires the adoption assistance agreement to be binding on both the adoptive parents and the agency administering the program. 42 U.S.C. Sections 673(a)(2). Section 453.074 further mandates that the Division must provide foster and adoptive parents with the rules that govern subsidies. Specifically, the statute requires that the Division "[p]rovide all petitioners for adoption with the rules and eligibility requirements for subsidies. Section 453.074.

Pursuant to its rulemaking authority granted under Sections 453.073, 453.074, and 210.506, the Division promulgated a rule governing the adoption subsidy at issue herein, 13 CSR 35-38.010. This rule governs adoption subsidy agreements, including who is eligible for an adoption subsidy and what services or needs the adoption subsidy should cover. Specific to this case, 13 CSR 35-38.010(12)(A) provides that residential care services may be included in a subsidy agreement or added by amendment, but "only if residential care is the least restrictive treatment setting and program appropriate to meet the child's needs." The general regulations governing all adoption and guardianship subsidy agreements further state:

10

(E) Except as otherwise provided in subsection (6)(F) of this regulation, the division is not obligated to make payments to a provider for services authorized through a subsidy agreement, unless the division has a currently active contract with the provider. The division shall not be obligated to pay for any service provided by the service provider, unless the service provider provides an invoice satisfactory to the division itemizing the date the service was provided, describing the nature of the service provided, and stating the amount for the service. The division will pay services directly to the provider. The use of contracted providers is required when a contract may be established. . . .

13 CSR 35-38.010(6)(E). Based on this portion of the regulation, which does not address the eligibility requirements for an "active contract," the Division argues that Appellants were not entitled to reimbursement for J.R.'s residential treatment at CALO because the record does not show that the Division had agreed to contract with CALO or reimburse Appellants before the services were provided. However, the exception of subsection 6(F) also must be analyzed:

(F) The division shall reimburse the adoptive parent(s) or guardian(s) for payments made directly by the adoptive parent(s) or guardian(s) to the provider where the provider of the service does not have a contract with the division only if the division agrees in writing before the service is provided to make the payment and if all of the following conditions are met:
1. The service is one (1) which the division has expressly agreed to pay in the subsidy agreement.
2. The adoptive parent(s) or guardian(s) establishes that there is no service provider having a contract with the division who is reasonably available to provide the service. In cases where the adoptive parent(s) or guardian(s) identifies an appropriate provider who does not have a contract with the division or the state, the division may decide, in its sole discretion, whether or not to enter into a contract with the provider and pay for the services directly, or whether to agree to reimburse the adoptive parent(s) or guardian(s) under this paragraph;
. . . .

13 CSR 35-38.010(6)(F). The exception, too, fails to address the requirements that a provider must meet to gain an "active contract" with the Division, but allows for a situation where even a provider without such contract may provide services, and then the Division shall reimburse the adoptive parents. However, the second subsection, 13 CSR 35-38.010(6)(F)(2) provides some guidance on situations where a provider does not have an active contract with the Division, in

11

that it expressly states that the "division may decide, in its sole discretion, whether or not to enter into a contract with the provider and pay for the services directly, or whether to agree to reimburse the adoptive parent(s) or guardian(s) under this paragraph[.]" We find this sentence to be an explanation that the Division alone determines whether to contract with certain providers. If the Division does not contract with a provider, then the "exception" regulation of 13 CSR 35-38.010(6)(F) applies and the criteria for reimbursement must be evaluated for determination.

The requirements for this "exception" for reimbursement are first, that approval is given in writing; second, that the child's adoption subsidy agreement expressly agrees to pay for the service (of residential treatment), 13 CSR 35-38.010(6)(F)(1); and third, that the adoptive parents have established that no other contracted service provider is reasonably available to provide the service. 13 CSR 35-38.010(6)(F)(2).

Other relevant portions of the regulations state that the adoptive parents are responsible for making arrangements for actual placement into a residential facility. 13 CSR 35-38.010(12)(B)1.F. Further, efforts shall be made to place the child in close proximity to their home to allow involvement by the adoptive parents in the child's treatment, 13 CSR 35-38.010(12)(B)1.E; and the adoptive parents shall obtain the necessary documentation regarding the child's condition from appropriate professionals, such as psychologists or psychiatrists. 13 CSR 35-38.010(12)(B)1.D. The regulations also provide for administrative and judicial review to establish "procedures for the resolution of disputes involving the delay, overpayment, denial, amount, or type of adoption or guardianship subsidy for applicants for or participants in the adoption and/or guardianship subsidy program." 13 CSR 35-38.010(15).

Here, the first question involves whether CALO has an "active contract" with the Division, and the undisputed evidence shows that it does not. Ms. Montgomery testified that

12

attachment therapy is not a service that the Division is able to contract for at this time, and that the Division "offered to negotiate a contract with CALO at level four rates in the past but CALO declined because their rates exceed what DSS can pay." Thus, it is undisputed that the Division would not pay CALO directly for residential treatment for J.R. This was not the only way for the Division to support J.R.'s placement at CALO, however. The regulation also provides a means for the Division to reimburse J.R.'s adoptive parents. 13 CSR 35-38.010(6)(F).

As the regulation next provides the "exception" for reimbursing a non-contracted provider, it is undisputed that the Division approved J.R. for residential treatment in the June 8, 2012 "Adoption Subsidy Agreement Attachment." The maximum amount approved was $4,452.53 per month for a six-month timeframe of June 5, 2012, through December 4, 2012. Whereas the regulations state that the adoptive parents are responsible for making arrangements for actual placement into a residential facility, 13 CSR 35-38.010(12)(B)1.F, and upon the advice of J.R.'s medical doctors, Appellants selected CALO for J.R.'s residential treatment center, which is a licensed treatment facility specializing in treating certain conditions, including reactive attachment disorder. Appellants sought the Division's approval to place J.R. at CALO, but were denied. At that point Appellants decided to appeal the Division's denial but move forward with placing J.R. at CALO in the meantime, so as not to delay her necessary treatment. Although the Division argues that Appellants should continue to be denied residential treatment at CALO because Appellants failed to obtain prior written approval for CALO, we find this argument disingenuous in that the Division's denial could never produce prior written approval without a long and arduous appeals process as in the case here. The appeal at issue is now approaching three years after the Division's initial denial and we cannot fathom a requirement that parents should delay the psychiatric treatment that both they and medical professionals deem necessary

13

to treat their child until such matter is reversed on appeal and then approved in writing. While approval by the Division is a reasonable requirement, the Division's denial is an appealable decision which might be overturned. Under the administrative and judicial review process outlined in 13 CSR 35-38.010(15), a person may be aggrieved by a denial in the subsidy process, as well as delay. Because Appellants sought the Division's prior written approval of residential treatment at CALO, but were denied, Appellants should not be penalized for placing their daughter at CALO during the appeal of that decision. Appellants simply were promoting the best interest and welfare of their child at all costs. Section 453.005; J.P., 752 S.W.2d at 849.

Next, in order to receive reimbursement for the residential treatment approved in the "Adoption Subsidy Agreement Attachment," the regulation requires that the adoptive parents have established that no other contracted service provider is reasonably available to provide the service. 13 CSR 35-38.010(6)(F)(2). The Division argues that there is nothing in the record to show that Good Shepherd could not meet the needs of J.R., had she remained there. It argues that the affidavit of Rob Gent, licensed professional counselor and clinical director at CALO, did not explain why J.R.'s needs could not be met at residential treatment facilities that have a contract with the Division. It argues the affidavit of Gary Boxer, who treated J.R. since 2009, recommending CALO, fails to provide a discussion of other residential treatment facilities that contract with the Division and why they could not reasonably meet the needs of J.R. through the use of other services. Further, the Division argues the letter from Angie Kovath from CenterPointe recommending CALO also fails to say that other residential treatment facilities will not meet the needs of J.R. and does not explain why Good Shepherd or other contract providers are not appropriate facilities to treat J.R. Finally, the Division argues that Appellants' testimony, specifically that of J.R.'s mother, failed to document the identity of the Washington state expert

14

who recommended CALO for treating reactive attachment disorder and failed to show that residential facilities that contract with the Division were not reasonably available to provide service to meet J.R.'s needs. In sum, the Division argues that Appellants' evidence fell short of showing why the facilities that contract with the Division could not meet the treatment needs of J.R.

A review of the record shows that the Director's decision and order denying the adoption subsidy at CALO stated that J.R.'s mother's testimony was insufficient to show that other residential facilities that contract with the agency were not reasonably available to provide services to meet the needs of J.R. However, the decision does not state that the mother's testimony is not credible, unreliable, or even disputed. Further, the Director's decision found Dr. Boxer's affidavit "unclear whether other services would reasonably meet the needs of [J.R.]," and "unclear [as to] the extent of Dr. Boxer's knowledge regarding Agency contract providers and the services which they offer." The Director's decision found Appellants "unable to establish that there is no service provider having a contract with the division who is reasonably available to provide residential treatment services for [J.R.,]" based on Appellants' testimony, Dr. Boxer's affidavit, and evidence regarding services offered at CALO. While the Division seems to argue Good Shepherd was an appropriate place to keep J.R. for a longer period of time, the evidence is clear that Good Shepherd was tried as an option but failed to succeed in that it could not prevent J.R. from running away. Moreover, the Director's decision failed to consider the opinion of Angie Kovath and J.R.'s "treatment team" at CenterPointe, when she stated: "It is the treatment team's recommendation that residential treatment, specifically at CALO in Lake of the Ozarks due to their attachment focused therapy, is the next step in the course of treatment." The decision additionally failed to reference the sworn testimony of CALO's clinical director, Mr.

15

Gent, who testified that the services at CALO were unique[3] in the field of residential treatment centers by focusing on issues of emotional regulation, attachment, and trauma, and utilizing attachment/relationship based model where all treatment is connected to and motivated by relationships. Dr. Boxer also testified that through his education, professional medical practice, and teaching, and seeing J.R. as a patient since 2009, he felt CALO was the "least restrictive treatment setting and program appropriate" to meet her needs.

In the Division's argument that it properly denied Appellants' request to approve the adoption subsidy for residential treatment at CALO, it suggests that parents have a heightened burden of "proof" in ruling out all *possible* places for residential treatment that contract with the Division, and in effect, discounting the opinions of medical professionals who have treated the child, as well as the opinion of the child's adoptive mother, all of whom collaboratively and intimately know the child's situation and propose the place of residential treatment "so as to promote the best interests and welfare of the child in recognition of the entitlement of the child to a permanent and stable home." Section 453.005, RSMo Supp. 1985; J.P., 752 S.W.2d at 849. Based on the relevant statutes and regulations, and the competent and substantial evidence presented, we disagree with this assessment by the Division. In giving the adoptive parents the freedom to make the arrangements for actual placement into a residential facility, 13 CSR 35-38.010(12)(B)1.F, and to make efforts to place the child in close proximity to his or her home to allow involvement by the adoptive parents in the child's treatment, 13 CSR 35-38.010(12)(B)1.E, in addition to obtaining the necessary documentation regarding the child's condition from

---

[3] "Unique" is defined as "1. Existing as the only one or as the sole example; single; solitary in type or characteristics;" "2. having no like or equal; unparalleled; incomparable;" "3. Limited in occurrence to a given class, situation, or area;" "4. Limited to a single outcome or result; without alternative possibilities;" "not typical; unusual." Dictionary.com Unabridged, Based on the Random House Dictionary, Random House, Inc. (2015), at www.dictionary.reference.com/browse/unique?s=t.

appropriate medical professionals, 13 CSR 35-38.010(12)(B)1.D, the regulations recognize the specialized personal knowledge and advocacy that parents have for their children. Moreover, parents do not have super powers to present specific information on why every possible contracted facility is not suitable for their child. In promoting the best interests of the child, the Division cannot simply demand a different treatment facility without providing its own evidence to contradict that presented by the parents.

The Director's denial of J.R.'s adoption subsidy for CALO is not supported by competent and substantial evidence, nor is it reasonable based on the evidence presented. The Director did not make any credibility determinations to find Appellants' testimony was not credible. The Division did not present alternative evidence to demonstrate why Good Shepherd, or any other place besides CALO, was best, other than Good Shepherd had a contract with the Division. Simply a suggestion by the Division – not a medical professional –that J.R. should have stayed at Good Shepherd for six months instead of moving to residential treatment at CALO, is not enough to refute Appellants' evidence that CALO was not only right, but necessary, for J.R. The Division argues that "[i]f the treatment team at Good Shepherd had made a determination that J.R. needed additional treatment, DSS would have been able to explore whether a facility within the monthly rate could meet J.R.'s treatment needs." The flaw in this argument is that the treatment team at Good Shepherd failed in its responsibility to treat J.R. by allowing J.R. to run away from there after a very short time. Thus, the recommendation of CenterPointe's treatment team is the most reliable evidence, and that recommendation was to start residential treatment at CALO. The Director's decision affirming the Division's decision denying the adoption subsidy for J.R.'s residential treatment at CALO failed to reference the evidence submitted by Appellants concerning CenterPointe's recommendation from Ms. Kovath and the treatment team that J.R.

17

should enroll at CALO. Additionally, the Division did not introduce any evidence concerning other service providers which were purportedly available to provide services appropriate to treat J.R.'s severe mental heath issues. Evidence was presented, however, admitting that the Division had in fact entered into at least one child specific contract with CALO for the treatment of an adopted child. The Director's decision is arbitrary and capricious in simply assuming that some other contracted facility exists that can properly treat J.R.

This case is similar to the cases of Missouri Division of Family Services v. Hill, 816 S.W.2d 702, 703, 705 (Mo. App. W.D. 1991), and Chrismer v. Missouri Division of Family Services, 816 S.W.2d 696 (Mo. App. 1991). In Hill, the claimant presented undisputed expert medical opinion regarding claimant's disability and the record established claimant's entitlement to the benefit. 816 S.W.2d at 703, 705. Also, the Chrismer court held that the claimant's uncontroverted expert medical testimony and medical records established the claimant's disability and entitlement to the benefit. 816 S.W.2d at 696. Here, like in both of those cases, the substantial, competent, and uncontroverted evidence demonstrates Appellants' entitlement to the benefit of the adoption subsidy reimbursement. While Appellants produced substantial evidence from medical professionals, those familiar with J.R.'s specific situation, and those familiar with the residential treatment offered at CALO, the Division produced no evidence in the record to refute Appellants and show that any contracted facility near Appellants' home was reasonably available to provide the services J.R. required with her reactive attachment diagnosis.

Given the regulation's provision that the adoptive parents are responsible for making arrangements for actual placement into the residential facility, 13 CSR 35-38.010(12)(B)(1)(F), along with the requirement that the service must be one expressly approved for payment in the subsidy agreement, 13 CSR 35-38.010(6)(F)(2), we find that the approval of CALO was in the

18

best interest of J.R. as demonstrated by the evidence of uncontroverted medical professionals and Appellants alike. The uncontroverted evidence was that CALO was the only residential treatment service provider in Missouri reasonably available to treat J.R.'s diagnosis of reactive attachment disorder and related severe mental health needs.

We reverse the Director's Decision denying the adoption subsidy for J.R. at CALO as the Division had approved residential treatment. The Division should have approved, in writing, the adoption subsidy for residential treatment for J.R. at CALO to reimburse Appellants for the amount allowed for residential treatment in the Adoption Subsidy Agreement Attachment. As the Court noted in J.P. v. Missouri Dep't of Soc. Servs., 752 S.W.2d at 851, the adoption subsidy benefits should be awarded retroactively, and we urge the Division to proceed expeditiously. Appellants' first point is granted. Accordingly, we need not review Appellants' remaining points on appeal.

### III. CONCLUSION

The judgment is reversed and the case is remanded to the circuit court with directions to remand to the Director to award the adoption subsidy reimbursement consistent with this opinion.

_____
ROY L. RICHTER, Judge

Patricia L. Cohen, P.J., concurs
Robert M. Clayton III, J., concurs